UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael S. Undlin,                                         Civil No. 08-1855 (JNE/FLN)

    Plaintiff,

    v.                                                     **ORDER AND REPORT AND RECOMMENDATION**

City of Minneapolis, *et al.*

    Defendants.

---

Michael S. Undlin, *pro se*, for Plaintiff.
Sara J. Lathrop for Defendants City of Minneapolis, Dolan and Faust.
Toni A. Beitz, Julie K. Bowman for Hennepin County Defendants.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on December 9, 2008, on Defendant City of Minneapolis' Motion to Dismiss or for Summary Judgment [#8] and Defendant Hennepin County's Amended Motion to Dismiss and/or for Summary Judgment [#14].[1] The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons which follow, this Court recommends Defendant City of Minneapolis' Motion to Dismiss or for Summary Judgment [#8] be **GRANTED**, and recommends that Defendant Hennepin County's Amended Motion to Dismiss and/or for Summary Judgment [#14] be **GRANTED**.

## I. FINDINGS OF FACT

Plaintiff Michael Undlin's claims arise from events that occurred on June 9, 2006 after he

---

[1] Hennepin County made a motion to dismiss and/or for summary judgment on July 15, 2008 [#5]. A month later, Hennepin County made the instant amended motion [#14] which made the earlier motion moot.

was admitted to a hospital for mental health treatment. (Compl. ¶ 19.) Hospital security staff apparently called 911 when Mr. Undlin refused to leave the emergency room, and Mr. Undlin was arrested for trespassing by the responding officer, Minneapolis Police Officer Lance Faust. (Compl. ¶¶ 19, 27.) Mr. Undlin, who was "passively noncompliant" at the time of the arrest, alleges that Officer Faust treated him with excessive force by jamming a knuckle behind and below Mr. Undlin's ear, handcuffing him tightly, and dragging him to the squad car. (Compl. ¶¶ 20, 25, 27.) Mr. Undlin was taken to the Hennepin County Adult Detention Center and placed in a Basement Admissions cell. (Compl. ¶ 33.) He alleges that he repeatedly asked for a nurse to document the red marks on his wrists from the handcuffs, but staff refused. (Compl. ¶¶ 35-40, 42-43.) In an attempt to get a response from a nurse, Mr. Undlin cut his arm and smeared blood on his cell window. (Compl. ¶ 41-42.) After Mr. Undlin cut his arm, Hennepin County staff placed Mr. Undlin in a restraint chair. (Compl. ¶ 45.) He was in the chair for approximately four hours, and repeatedly asked to be taken out of the chair due to pain caused by the restraints. *Id.* He alleges that his time in the restraint chair is a violation of state, national, and international laws and standards. (Compl. ¶¶ 47-49.)

## II. STANDARD OF REVIEW

In analyzing the adequacy of a complaint under Rule 12(b)(6), the Court must construe the complaint liberally and afford the plaintiff all reasonable inferences to be drawn from those facts.[2] *See Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002). For the purpose of a motion

---

[2] The Federal Rules of Civil Procedure permit the Court to treat a motion to dismiss as a motion for summary judgment if it relies upon facts outside those alleged within the four corners of the Complaint. Fed. R. Civ. P. 12(d). In conjunction with this litigation, the Plaintiff has submitted hundreds of pages of documents, as well as photos, video files, and audio files. The Court has reviewed these submissions, but has not relied upon the information contained therein

to dismiss, facts in the complaint are assumed to be true. *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 738 (8th Cir. 2002). Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and destined to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and may not merely state legal conclusions. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (U.S. 2007).

### III.  LEGAL ANALYSIS

**A.  The §1983, §1985, and §1986 Claims and Associated Punitive Damages Claim Must Be Dismissed For Failure to State a Claim Upon Which Relief May Be Granted (Counts 1, 2, 8, 9 and 10)**

Plaintiff's claims under 42 U.S.C. §§ 1983, 1985 and 1986 fail to state a claim upon which relief can be granted under Rule 12(b)(6). To establish these claims, Plaintiff must allege that a person acting under color of state law deprived him of a right secured by the U.S. Constitution or federal law. 42 U.S.C. § 1983 states, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person

---

because it has determined that the facts contained in these submissions would not change the outcome or analysis under Rule 12.

within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured..." 42 U.S.C. § 1983.  The right to be free from excessive force is a clearly established constitutional right under the umbrella of the Fourth Amendment's prohibition against unreasonable searches and seizures. *See*, *e.g.*, *Guite v. Wright*, 147 F.3d 747, 750 (8th Cir. 1998).  However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). Rather, the test is whether the force used is "reasonable." *Id.*  The Eighth Circuit has held that "a *de minimis* use of force or injury is insufficient to support a finding of a constitutional violation." *Andrews v. Fuoss*, 417 F.3d 813, 818 (8th Cir. 2005) (summary judgment granted where sheriff forcefully struck plaintiff from behind, causing her to "see stars") (citing *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007-08 (8th Cir. 2003)(tight handcuffs do not amount to excessive force; summary judgment granted where police officer struck or pushed plaintiff approximately five times and then handcuffed plaintiff, causing a bleeding wrist injury which was held to be too minor to support an excessive force claim).  Both the Eighth Circuit and this Court have applied the *de minimis* injury doctrine to rule that allegations of many types of minor injuries, often more extensive than those alleged in this case, do not rise to the level of a constitutional violation as a matter of law.

    **1.**    **Minneapolis Defendant Faust and the City of Minneapolis**

    **a.**    **§ 1983 Claims**

The excessive force claim against Minneapolis Police Officer Faust for jamming a knuckle behind Plaintiff's ear, dragging him to the squad car, and handcuffing him tightly

alleges precisely the type of *de minimis* injury that, even if true, cannot meet the 12(b)(6) standard as a matter of law. *See Crumley* at 818. Therefore, taking Plaintiff's allegations to be true and affording Plaintiff all reasonable inferences from the facts alleged, Plaintiff fails to state a claim for excessive force under § 1983.

Additionally, the § 1983 claim against the City of Minneapolis must also fail, because without a constitutional violation by any individual municipal officials or employees, there can be no § 1983 municipal liability. *Hayek v. City of St. Paul*, 488 F.3d 1049, 105 (8th Cir. 2007) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694,(1978). Also, Plaintiff fails to allege facts by which one could begin to draw an inference that the conduct complained of stemmed from the City of Minneapolis's adoption of unconstitutional policies or customs that caused the violation of Plaintiff's constitutional rights. *Crumpley-Patterson v. Trinity Lutheran Hospital*, 388 F.3d 588 (8th Cir. 2004) (quoting *Doe v. Sch. Dist. Of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

  **b.** **§ 1985 and § 1986 Claims**

The § 1985 claim against Officer Faust fails because Plaintiff alleges no facts showing that the officer conspired with other individuals. Under § 1985(3), an injured party has a cause of action against anyone who deprives, or conspires to deprive, such party of certain rights or privileges, if he or she is able to show: (1) a conspiracy; (2) deprivation of any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the law; (3) an act by one of the conspirators in furtherance of the conspiracy; and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. 42 U.S.C. § 1985(3). To prove conspiracy, the plaintiff must show that Officer Faust conspired

with others to deprive the Plaintiff of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the plaintiff. *See, e.g., Simpson v. Weeks*, 570 F. 2d 240, 242-43 (8th Cir. 1978). In order to prove the existence of a §1985 conspiracy, a plaintiff "must allege with particularity and specifically demonstrate with material facts" that the defendant conspirators reached an agreement. *City of Omaha Employees Betterment Ass'n*, 883 F.2d 650, 652 (8th Cir 1989). The plaintiff can satisfy this burden by "point[ing] to at least some facts which would suggest that appellees 'reached an understanding' to violate [her] rights." *Id.*, (quoting *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989). Plaintiff alleges no facts that meet these requirements. Therefore, the § 1985 claim fails, and the § 1986 claim also fails because a § 1986 claim depends upon the existence of a claim under § 1985. *McIntosh v. Arkansas Republican Party-Frank White Election Committee*, 766 F.2d 337, 340 (8th Cir. 1985) *(*citing *Mollnow v. Carlton*, 716 F.2d 627 (9th Cir. 1983)).

    **2.**    **Hennepin County Defendants**

    **a.**    **§ 1983 Claims**

Defendants argue that with respect to the §1983 claims against at least some of the Hennepin County Defendants, Plaintiff makes no factual allegations at all and that the Complaint is therefore facially deficient with respect to those individuals. However, assuming for the sake of argument that the factual allegations Plaintiff did make in the Complaint are properly made against all Hennepin County Defendants, Plaintiff still fails to state a claim for which relief may be granted under the 12(b)(6) standard.

Courts must give prison and jail administrators flexibility in the adoption and execution

of policies and practices necessary to ensure the safety of inmates and corrections personnel, to preserve internal order, and to preserve institutional security. *Bell v. Wolfish*, 441 U.S. 520, 540 f.n.22, 546-547 (1979). In evaluating the constitutionality of restrictions on the liberty of pretrial detainees, the proper constitutional inquiry is whether the conditions amount to punishment. *Id.* at 535. The Court noted that "[r]estraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment even if they are discomforting." *Id.* 441 U.S. at 540.  The *Bell* court stated further that, "Absent a showing of an expressed intention to punish on the part of the detention facility official" the constitutional determination will turn on whether the restriction is "reasonably related to a legitimate governmental objective" or is  merely arbitrary or purposeless. *Id.* at 538-39.  Courts examining claims regarding use of restraint chairs have applied this test, and have upheld the use of restraint chairs for up to 42 hours.  *See, e.g., Fuentes v. Wagner*, 206 F.3d 335, 343 (3d Cir. 2000) (finding no constitutional violation where plaintiff held in restraint chair for eight hours, consisting of four consecutive two-hour segments separated by 10-minute breaks); *Grady v. Holms*, 2007 WL 2507395, *5 (S.D.Ga. 2007) (finding no constitutional violation where plaintiff was held in restraint chair for 42 hours, with two breaks for eating); *Davis v. Lancaster County,* 2007 WL 2728549 *5-*6 (D. Neb. 2007) (granting summary judgment where plaintiff was placed in a restraint chair for three hours); *Slaughter v. Dooly County*, 2007 WL 2908648, *10-11 (M.D. Ga. 2007) (finding no constitutional violation for use of a restraint chair for 5.25 hours, consisting of consecutive periods of two hours and 3.25 hours); *Birdine v. Gray,* 375 F. Supp. 2d 874, 880-881 (D. Neb. 2005) (finding no constitutional violation for nine hours in a restraint chair); *Pardue v. Glass*, 2008 WL 249173, *19-*24 (W.D. Ark 2008) (finding no constitutional

violation for decision to place detainee in restraint chair, but awarding damages of $1500 because 13 hours in the chair was constitutionally excessive under facts of the case).

Here, Plaintiff alleges that Hennepin County Defendants Stanek, Peterson, Trombley, Heldt, Pileggi, Miller, and Hillestad are responsible for placing him in a restraint chair after he purposefully cut himself and smeared blood on his cell window. (*See generally*, Compl.) Plaintiff alleges he was in the chair for four hours, during which he was in great pain and repeatedly asked to be released. (Compl. ¶ 45.) It is uncontested that the decision to place Plaintiff in the restraint chair was a result of Plaintiff's self-injurious behavior, and Plaintiff does not allege physical injury stemming from his time in the chair. As a matter of law, under the cases discussed above, allegations of a discomforting four-hour stint in a restraint chair, without allegations that the use of the chair was motivated by an improper purpose such as punishment, is not a violation of § 1983. Therefore, taking Plaintiff's allegations to be true and affording Plaintiff all reasonable inferences from the facts alleged, Plaintiff's complaint fails to state a claim for excessive force under § 1983 against the Hennepin County Defendants.

The § 1983 claim against Hennepin County itself must also fail, because without a constitutional violation by any individual municipal officials or employees, there can be no § 1983 municipal liability. *Hayek,* 488 F.3d at 1050 (8th Cir. 2007). Also, Plaintiff fails to allege facts by which one could begin to draw an inference that the conduct complained of stemmed from the Hennepin County's adoption of unconstitutional policies or customs which caused the violation of Plaintiff's constitutional rights. *Crumpley-Patterson v. Trinity Lutheran Hospital*, 388 F.3d 588 (8th Cir. 2004) (quoting *Doe v. Sch. Dist. Of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003). Affording the Plaintiff's complaint all favorable inferences, it at most alleges a single

instance of unconstitutional conduct, which is not sufficient for a finding of liability on the part of Hennepin County. *Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985).

>  **b.**     **§ 1985 and § 1986 Claims**

Plaintiff's § 1985 claim against the Hennepin County Defendants fails because Plaintiff alleges no facts showing that the defendants conspired with each other. To prove § 1985 conspiracy, a plaintiff must show that one or more of the Defendants entered into an agreement with another Defendant to deprive the Plaintiff of a constitutional right; that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and that the overt act injured the Plaintiff. *See, e.g., Simpson v. Weeks*, 570 F. 2d 240, 242-43 (8th Cir. 1978). In order to prove the existence of a § 1985 conspiracy, a plaintiff "must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Omaha Employees Betterment Ass'n v. Omaha*, 883 F.2d 650,652 (8th Cir. 1989). Plaintiff alleges no facts that meet these requirements. Therefore, the § 1985 claim fails, and the § 1986 claim also fails because a § 1986 claim depends upon the existence of a claim under § 1985. *McIntosh v. Arkansas Republican Party-Frank White Election Committee*, 766 F.2d 337, 340 (8th Cir. 1985) *(citing Mollnow v. Carlton*, 716 F.2d 627 (9th Cir. 1983)). Therefore, taking Plaintiff's allegations to be true and affording Plaintiff all reasonable inferences from the facts alleged, Plaintiff's complaint fails to state a claim under either § 1985 or §1986.

> **3. Punitive Damages Claims Against All Individual Defendants**

As discussed above, the substantive §1983, §1985, and §1986 claims against all individual Defendants fail to state a claim upon which relief can be granted under Rule 12(b)(6) and must be dismissed. Although punitive damages may be available for § 1983 violations, as a

result of the Complaint's failure to state substantive claims against the individual Defendants, the dependent punitive damages claims necessarily fail. *Smith v. Wade*, 461 U.S. 30, 34-36 (1983); *Swipies v. Kofka*, 419 F. 3d 709, 717-18 (8th Cir. 2005).

### B. The State Law Tort Claims for False Arrest, Assault and Battery, and Intentional Infliction of Emotional Distress Must Be Dismissed For Failure to State a Claim Upon Which Relief May Be Granted (Counts 3, 4, and 7)

The Plaintiff has asserted state law tort claims for false arrest, assault and battery, and intentional infliction of emotional distress ("IIED"). (Compl. ¶¶ 54-57, 66-67.) The false arrest claim is asserted solely against Defendant Faust, while the remaining claims are asserted against Faust and Hennepin Defendants Peterson, Trombley, Heldt, Pileggi, Miller, and Hillestad.

Although the Complaint arguably fails to allege facts with respect to each tort claim and each defendant that state a claim under the 12(b)(6) standard, it is unnecessary to delve into a discussion of each claim with respect to each defendant because the Minnesota common law doctrine of official immunity bars these claims. *City of Minneapolis v. Ames & Fischer Co. II, LLP*, 724 N.W.2d 749, 755-56 (Minn. Ct. App. 2006) (citing *Pletan v. Gaines*, 494 N.W.2d 38, 40 (Minn. 1992). The common law provides that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not personally liable to an individual for damages unless he is guilty of a willful or malicious wrong." *Elwood v. Rice County*, 423 N.W.2d 671, 677 (Minn. 1988). Official immunity protects a government employee "from fear of personal liability that might deter independent action." *Janklow v. Minn. Bd. of Exam'rs for Nursing Home Adm'rs*, 552 N.W.2d 711, 715 (Minn. 1996). Under Minnesota law, officials are entitled to official immunity unless the plaintiff shows: "1) a ministerial duty is either not performed or performed negligently; or 2)... a willful or malicious wrong is committed."

*Schroeder v. St. Louis County*, 708 N.W.2d 497, 505 (Minn. 2006) (citing *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 662 (Minn. 2004).

    First, to determine whether the Plaintiff meets the standard for the ministerial duty exception to the official immunity doctrine, the conduct under scrutiny must be defined because the nature of the conduct and duties determines whether the conduct is ministerial. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006), *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 315 (Minn. 1998). A ministerial duty is "absolute, certain and imperative, involving the execution of a specific duty arising from fixed and designated facts,"or creating a "sufficiently narrow standard of conduct" that employees feel "bound to follow." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991); *Anderson*, 678 N.W.2d at 659.[3]

    Under the second exception to the official immunity doctrine for willful and malicious wrongs, the plaintiff must bring forward specific facts showing that the official intentionally and knowingly committed a wrongful act without legal justification or excuse. *Elwood*, 423 N.W. 2d at 679; *Rico*, 472 N.W. 2d at 107; *Reuter v. City of New Hope*, 449 N.W. 2d 745, 751 (Minn. App. 1990). The Plaintiff here makes no allegations in his Complaint that either specifically allege willful or malicious conduct or allege conduct that rises to the level of willfulness or maliciousness. Therefore, Plaintiff cannot overcome the official immunity bar in this manner.

    With respect to whether the duties of the government officials were ministerial or

---

[3] The Eighth Circuit provides an example of a ministerial duty in *Gordon ex. rel. Gordon v. Frank*, 454 F.3d 858 (8th Cir. 2006)(applying Minnesota law), citing to a Washington County policy narrowing the standard of an officer's conduct to simple and definite tasks when an inmate becomes ill. *Frank*, 454 F.3d at 856. The policy stated, "Officers must notify the sergeant. The sergeant must assess the situation." *Id.* In *Frank*, the sergeant was alleged to have made no attempt at all to assess the situation, instead leaving it up to the officers. *Id.* The Court found the sergeant's duty to make an assessment to be ministerial, rather than discretionary. *Id.*

discretionary, the Court will divide the analysis among the individual Defendants. Defendant Faust was acting in his capacity as a Minneapolis police officer when he arrested the Plaintiff. (Compl.¶ 19.) Duties of law enforcement and crime prevention by police officers are considered discretionary duties entitling them to official immunity. *Johnson v. Morris*, 453 N.W. 2d 31, 41 (Minn. 1990); *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994). Therefore, the tort claims against Defendant Faust must fail.

With respect to Defendants Peterson, Trombley, and Heldt, who were acting in their capacities as Hennepin County Corrections Officers, the Complaint fails to describe any conduct by these individuals or to allege any facts constituting claims against them. However, even assuming that the "John Doe" corrections officer named in the complaint refers to one or more of these individuals, the conduct required of these officials when handling inmate intake and behavior issues (*e.g.*, "frisking" the Plaintiff, questioning the Plaintiff, carrying the Plaintiff to a cell, dealing with Plaintiff's self-inflicted injury, etc.) can not plausibly be described as involving the execution of a specific duty within a narrow standard of conduct that the corrections officers felt bound to follow. (Compl. ¶¶ 29-46.) Instead, the facts alleged in the Complaint make it clear that the corrections officers are called upon to use their discretion in determining how to handle individual inmate needs. *Id.* Therefore, the claims against Peterson, Trombley, and Heldt must fail.

Turning to the remaining corrections officer, Defendant Pileggi, Plaintiff alleges that Pileggi saw blood on the cell window, learned it came from Plaintiff's self-inflicted injury to his arm, and brought Defendant Miller to talk with the Plaintiff. (Compl. ¶¶ 41.) Once again, these duties cannot plausibly be described as ministerial, because Defendant Pileggi had a range of

options available to her in dealing with Mr. Undlin's injury; she was not bound by a narrow standard of conduct forcing her to carry out particular tasks. Thus, the claims against Defendant Pileggi must also fail.

Finally, Plaintiff alleges that Defendant Miller, a nurse at the Hennepin County Adult Detention Center, was involved in treating his arm injury and in the decision to put him in the restraint chair. (Compl. ¶¶ 37-44.) Plaintiff alleges that Defendant Hillestad, also a nurse, took him out of the restraint chair and told him that if he did not cooperate, Plaintiff would be put back in the chair. (Compl. ¶ 46.) Clearly, both Defendant Miller and Defendant Hillestad, as nurses had discretion as to how to treat Plaintiff's injuries and how to handle Plaintiff's self-injurious behavior, and thus their duties cannot fairly be described as ministerial. Therefore, the claims against Miller and Hillestad must also fail.

In summary, taking Plaintiff's allegations to be true and affording Plaintiff all reasonable inferences from the facts alleged, Plaintiff's complaint fails to state a claim upon which relief may be granted for the state law torts of false arrest, assault and battery, and intentional infliction of emotional distress with respect to all Defendants. The Defendants are shielded from these claims by the doctrine of official immunity, and Plaintiff fails to allege facts showing any of the Defendants acted wilfully or maliciously or were performing ministerial duties. Thus, the state tort claims must be dismissed under Rule 12(b)(6).

**C. The Negligence Claims Must Be Dismissed For Failure to State a Claim Upon Which Relief May Be Granted (Counts 5 and 6)**

Plaintiff asserts claims for negligent hiring, supervision, training, and retention against the City of Minneapolis and Minneapolis Police Chief Timothy Dolan, and against Hennepin County, Hennepin County Medical Center ("HCMC"), and Hennepin County Sheriff Richard

Stanek. (Compl. ¶¶ 58-65.) The Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6) with respect to these negligence claims.

As a preliminary matter, the Complaint is devoid of factual allegations against Defendant Dolan and Defendant Stanek, and thus the negligence claims fail to state a claim upon which relief may be granted with respect to these Defendants. Further, as an operating department of Hennepin County, HCMC is not a legal entity capable of being sued. *State v. Civil Service Comm'n of City of Minneapolis*, 154 N.W. 2d 192, 194 (Minn. 1967)(absent express authority, an agency or department of a municipal corporation does not have the capacity to be sued as a separate entity). Therefore, the claims against HCMC must also be dismissed, leaving only the claims against the municipal entities City of Minneapolis and Hennepin County.

Plaintiff also fails to state a claim upon which relief may be granted with respect to these municipal entities because it is well-settled law in Minnesota that municipal governments are afforded "statutory immunity" from "any claim based on the performance or the failure to exercise or perform a discretionary function or duty…." Minn. Stat. § 466.03, subd. 6. This immunity honors the constitutionally required separation of powers by protecting "the legislative and executive branches from judicial second-guessing of certain policy-making activities through the medium of tort actions." *Schroeder v. St. Louis County*, 708 N.W.2d 497, 503 (Minn. 2006). Thus, "[w]hether governmental action is protected by statutory immunity is a question of law." *Conlin v. City of St. Paul*, 605 N.W.2d 396, 400 (Minn. 2000). Minnesota state appellate courts have consistently held that government entities are entitled to statutory immunity as a

matter of law against negligent supervision and negligent retention claims.[4] *Hawkinson v. Anoka County*, 2006 WL 2474046, *5 (Minn. Ct. App., Aug. 29, 2006) (citing *Gleason v. Metro. Council Transit Operations*, 563 N.W.2d 309, 320 (Minn. Ct. App. 1997), *aff'd in part and rev. in part on other grounds*, 582 N.W.2d 216 (Minn. 1998) and *Oslin v. State*, 543 N.W.2d 408, 416 (Minn. Ct. App. 1996). Thus, "decisions involving supervision and retention of employees are discretionary acts entitled to statutory immunity." *Id.*, (citing *Gleason*, 563 N.W.2d at 320.) Similarly, a municipality's decisions regarding the hiring of employees are discretionary acts entitled to statutory immunity. *See Hassan v. City of Minneapolis*, 489 F.3d 914, 920 (8th Cir. 2007) (citing *Fear v. Indep. Sch. Dist. 911*, 634 N.W.2d 204, 212 (Minn. Ct. App. 2001) (stating hiring, supervision, and training of police officers are policy-level activities protected by statutory immunity).

Further, it is worth noting that even if the City of Minneapolis and Hennepin County were not immune from claims for negligent hiring, supervision, retention, and training, the claims must still fail as a matter of law because they are dependent upon viable underlying negligence claims against individual defendants. Since all claims against individual Defendants have been dismissed, the negligence claims against the municipal entities cannot survive.

## IV.   RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant City of Minneapolis' Motion to Dismiss or for Summary Judgment [#8] be **GRANTED**, and recommends that Defendant Hennepin County's Amended

---

[4] Minnesota does not recognize a cause of action for negligent training, so this claim must be dismissed. *Johnson v. Peterson*, 734 N.W.2d 275, 277 (Minn. App. 2005).

Motion to Dismiss and/or for Summary Judgment [#14] be **GRANTED**.

Based upon all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Hennepin County's Motion to Dismiss and/or for Summary Judgment [#5] is **DENIED as moot**, that Plaintiff's Motion Requesting Judicial Notice of Certain Specific Facts Readily Verifiable [#70] is **DENIED**, that Plaintiff's Motion to File Second Amended Complaint is **DENIED as moot** [#72], and that Plaintiff's Motion Requesting Judicial Notice of Certain Specific Facts Readily Verifiable [#73] is **DENIED**.

DATED: February 18, 2009                     *S/ Franklin L. Noel*
                                             FRANKLIN L. NOEL
                                             United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **March 6, 2009**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **March 6, 2009,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.