UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Michael S. Undlin,

    Plaintiff,

v.

City of Minneapolis, Tim Dolan,
Lance Faust, John Doe I, Jane Doe I,
County of Hennepin, Richard Stanek,
Brian Peterson, Vernon Trombley,
Brock Heldt, Brie Pileggi, Deb Miller,
Robert Hillestad, John Doe II, and
Jane Doe II,

    Defendants.

Civil No. 08-1855 (JNE/FLN)
ORDER

---

Daniel E. Gustafson, Esq., and James W. Anderson, Esq., Gustafson Gluek PLLC, appeared on brief for Plaintiff Michael S. Undlin.

Sara J. Lathrop, Esq., Minneapolis City Attorney's Office, appeared on brief for Defendants City of Minneapolis, Tim Dolan, and Lance Faust.

Toni A. Beitz, Esq., and Julie K. Bowman, Esq., Hennepin County Attorney's Office, appeared on brief for Defendants County of Hennepin, Richard Stanek, Brian Peterson, Vernon Trombley, Brock Heldt, Brie Pileggi, Deb Miller, and Robert Hillestad.

---

This case is before the Court on Michael S. Undlin's motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure. On June 9, 2008, Undlin filed suit against the City of Minneapolis, Hennepin County, and several employees of the City of Minneapolis or Hennepin County. He asserted claims under 42 U.S.C. §§ 1983, 1985, 1986 (2006) and state law. The City of Minneapolis, Tim Dolan, and Lance Faust (collectively, Minneapolis Defendants) moved to dismiss on July 20, 2008, and Hennepin County, Richard Stanek, Brian Peterson, Vernon Trombley, Brock Heldt, Brie Pileggi, Deb Miller, and Robert

1

Hillestad (collectively, Hennepin County Defendants) moved to dismiss on August 14, 2008. In a Report and Recommendation (R&R) dated February 18, 2009, the magistrate judge recommended dismissal of all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Undlin, who was then *pro se*, objected to the R&R, and Defendants responded. The Court adopted the R&R and dismissed the action on March 16, 2009. Judgment was entered the next day.

On March 30, 2009, Undlin filed a request for leave to file a motion for reconsideration, which the Court construed as a "Motion to Alter or Amend a Judgment" under Rule 59(e). *See Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999). The Court, having a growing sense of disquiet about the entry of judgment arising from Undlin's demonstrated communication deficits, asked Daniel E. Gustafson of Gustafson Gluek PLLC to find an attorney who might be willing to represent Undlin through the new Federal Pro Se Project sponsored by the Minnesota Chapter of the Federal Bar Association.[1] Mr. Gustafson agreed to undertake the representation himself, and the parties engaged in settlement discussions. After those discussions proved fruitless, Undlin, through his counsel, submitted a supplemental memorandum in support of his Rule 59(e) motion seeking vacatur of the judgment, reinstatement of his § 1983 claims against the Hennepin County Defendants, and to assert a claim for deliberate indifference to a prisoner's serious medical needs. Defendants responded to the supplemental memorandum. Based on those submissions,

---

[1] The Federal Pro Se Project provides civil pro se litigants in the District of Minnesota with the opportunity to be represented by counsel free of charge. Mr. Gustafson is one of the coordinators of that program.

and for the reasons set forth below, the Court grants in part and denies in part the Rule 59(e) motion.[2]

## I. BACKGROUND

Undlin's claims arise out of his arrest and subsequent detention in June 2006. The Court summarizes the allegations in Undlin's Complaint below.

Undlin, who is "severely mentally ill," was "suffering an acute, severe decompensation with associated symptoms, was lying quiet, still, eyes closed, and non-responsive on a gurney in hospital attire" in the Hennepin County Medical Center's Emergency Room when Faust, a Minneapolis police officer, arrived in response to a 911 call by hospital security. After Undlin refused to respond to Faust's questioning, he was arrested, handcuffed, dragged from the gurney to a squad car, and transported to the Hennepin County Adult Detention Center (HC-ADC). Undlin alleges that the handcuffs caused his wrists to "hurt extraordinarily," but that he did not complain about the pain during transportation because of his mental illness.

After being frisked at the HC-ADC by an unidentified Hennepin County Corrections Officer (CO) in a manner that caused Undlin to "puke and scream in pain when Defendant Doe jammed Plaintiff Undlin's testicles 'up,'" Undlin was placed in a cell, where he returned to his non-responsive state. Later, he became aware of the pain in his wrists and examined them. He discovered that both wrists were "deep purple" and encircled by deep grooves. He repeatedly asked an unidentified CO to take pictures of his wrists. The CO refused. Undlin then asked for a nurse to come to his cell to document the condition of his wrists. Deb Miller, a nurse contracted to the HC-ADC, arrived "reasonably soon." She was laughing and said to two COs, "This is so

---

[2] The Court denies Undlin's request for oral argument on his Rule 59(e) motion. The Court has determined that oral argument is unnecessary.

3

embarrassing." After "several mutually angry exchanges," Miller agreed to document that Undlin's wrists were red in her report and let him review her report for accuracy.

Hours later, Undlin repeatedly asked for Miller to return to his cell to document the condition of his wrists. Miller did not come, and a CO told Undlin, "Look sir, the nurse is busy with real emergencies." Undlin was "shocked and concerned that his wrists wouldn't be documented." He "realized that no CO Defendant would get Defendant Miller unless she was 'forced' to come by the creation of a small 'real' emergency, which Plaintiff Undlin created via a minor abrasion of his forearm." CO Brie Pileggi saw a "small smear of blood on the cell window" and asked about its origin. After Undlin showed Pileggi his arm, she immediately brought Miller to talk to Undlin.

When Miller arrived, she "warned Plaintiff Undlin that if he did anything like this again she would have him put into a restraint chair." Miller entered the cell, and an "argumentative exchange" ensued while Miller tried to look at the abrasion and Undlin tried to get Miller to first look at and document the condition of his wrists, which were still red and grooved. Only when Undlin reminded Miller of her "professional ethics responsibilities" did she acknowledge that his wrists were still red.

Undlin next heard Miller and a CO discuss putting him in a restraint chair. He was then confined to a restraint chair and left in the restraint chair for four hours "in a cell whose door never opened." Undlin "went from feeling like the cuffs/restraint straps were fine" when first confined to the restraint chair "to realizing that his wrists became numb, and then began to hurt, to realizing that he was in a lot of pain, that the pain kept growing and that no one would respond to 2 ½ to 3 hours of his crying, begging, pleading for help, for mercy." The pain, which Undlin described as "excruciating," increased "to such intolerable levels that near the end of the ordeal

4

[Undlin] was broken down to a barely audible murmur, and to a frightening and shocking hallucination."

Unidentified COs and Robert Hillestad, another nurse, "painfully removed [Undlin] from the agony of the restraint chair" at the end of the four hours. Hillestad and the COs "threatened to keep or put him back into the chair if he didn't 'cooperate' by not complaining about having been tortured, not describing the situation as crimes, not asking that pictures be taken, and not asking how to call the police or an attorney for help."

## II. ANALYSIS

Rule 59(e), which permits motions to alter or amend a judgment, "was adopted 'to make clear that the district court possesses the power to rectify its own mistakes in the period immediately following the entry of judgment.'" *Norman v. Ark. Dep't of Educ.*, 79 F.3d 748, 750 (8th Cir. 1996) (quoting *White v. N.H. Dep't of Employment Sec.*, 455 U.S. 445, 450 (1982)). Motions pursuant to Rule 59(e) serve the limited function of correcting "manifest errors of law or fact" or presenting newly discovered evidence. *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006). A Rule 59(e) motion may not be used to raise new legal theories or arguments. *Id.* "A district court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e)." *Id.* Rule 59(e) permits a motion to vacate a judgment. *See In re Champion*, 895 F.2d 490, 492 (8th Cir. 1990) (per curiam) ("We have treated the motion to vacate as one made under Fed. R. Civ. P. 59(e).")

**A. Undlin's § 1983 claims against the Hennepin County Defendants based on his confinement to the restraint chair**

Undlin contends that there was manifest error in the R&R because it misapplied the standard for dismissal under Rule 12(b)(6), failed to properly construe the facts set forth in the Complaint, failed to consider whether the extended use of the restraint chair was impermissible

5

punishment, and misapplied factually distinct cases. The Hennepin County Defendants respond that the R&R properly construed the Complaint and applied the relevant law.

Although the United States Court of Appeals for the Eighth Circuit has not defined "manifest error," the United States Court of Appeals for the Seventh Circuit explains: "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Before determining whether there was manifest error in the R&R, the Court articulates the standards for deciding a Rule 12(b)(6) motion and analyzing Undlin's constitutional claims while a pretrial detainee at the HC-ADC.

On a motion to dismiss under Rule 12(b)(6), a court accepts as true the facts alleged in the complaint and grants all reasonable inferences in favor of the non-moving party. *Minneapolis Taxi Owners Coal., Inc. v. City of Minneapolis*, 572 F.3d 502, 506 (8th Cir. 2009). The allegations must supply sufficient facts to state a facially plausible claim to relief. *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 502 (8th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

It is undisputed that the standard set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979), applies to Undlin's claims against the Hennepin County Defendants based on his confinement to the restraint chair. As a pretrial detainee, Undlin could not be punished prior to an adjudication of

guilt in accordance with due process of law. *See Bell*, 441 U.S. at 535. The proper inquiry when evaluating the constitutionality of the conditions of Undlin's confinement is whether the conditions amounted to punishment. *See id.*; *Putman v. Gerloff*, 639 F.2d 415, 419-22 (8th Cir. 1982) (applying *Bell* to constitutional challenge to conditions of confinement of and use of force against pretrial detainees). When distinguishing between punitive measures and permissible regulatory measures, a court must decide whether the disability was imposed for the purpose of punishment or whether it was an incident of some other legitimate governmental purpose. *Bell*, 441 U.S. at 538. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally "will turn on 'whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.'" *Id.* (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). If a condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. *Id.* at 539. However, if a restriction or condition is not reasonably related to a legitimate goal, a court may infer that the purpose of the governmental action is punishment. *Id.*

Undlin's contention that the R&R misapplied the Rule 12(b)(6) standard is based primarily on the statements in the R&R that: (1) Undlin did not allege that "the use of the chair was motivated by an improper purpose such as punishment" and (2) "[i]t is uncontested that the decision to place Plaintiff in the restraint chair was a result of Plaintiff's self-injurious behavior." With respect to Undlin's self-injurious behavior, the Complaint alleges that Undlin abraded his arm to "force" Miller to return to his cell and document the condition of his wrists. Nothing in the Complaint indicates that Undlin had any intention of injuring himself once he achieved that

7

objective or that Miller or the COs believed that Undlin presented a danger to himself. Undlin also alleged that Miller and the COs did not decide to put him in the restraint chair until after he again argued with them about the documentation of the condition of his wrists. Moreover, although Undlin did not explicitly describe his confinement to the restraint chair as "punishment," he alleged that Miller told him that "if he did anything like this **again** she would have him put into a restraint chair" (emphasis added) and that Hillestad and the COs threatened to put Undlin back in the restraint chair if he did not "cooperate." Based on these factual allegations, it could be reasonably inferred that Miller and the COs decided to confine Undlin to the restraint chair because he was argumentative and irritated them with his repeated requests to document the condition of his wrists and that Miller, Hillestad, and the COs left him in the restraint chair for four hours for the same reasons. On a motion to dismiss, the Court cannot conclude that confining Undlin to a restraint chair for these reasons was reasonably related to a legitimate governmental objective. *Cf. id.* at 539 n.20 ("Retribution and deterrence are not legitimate nonpunitive governmental objectives."); *Putnam*, 639 F.2d at 420 n.3 (same).

The R&R also relied on the statement in *Bell*, 441 U.S. at 540, that "restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment even if they are discomforting." This statement does not support dismissal of Undlin's claims on a Rule 12(b)(6) motion because he alleges more than "discomforting" restraints; he alleges that his confinement to the restraint chair caused "intolerable" and "excruciating" pain that left him crying, begging, and pleading for mercy. The difference between discomforting restraints and those that cause intolerable and excruciating pain cannot be ignored. Moreover, reliance on the statement in *Bell* presupposes that the restraints are "reasonably related to the institution's interest in maintaining jail security," but the

8

Court has concluded that Undlin has alleged that his confinement to the restraint chair was not reasonably related to any such legitimate objective.

Finally, the cases relied on by the R&R when recommending dismissal of Undlin's claims do not alter this conclusion. In the cited cases, courts dismissed claims based on confinement to a restraint chair after reviewing evidence relevant to a number of factors, including the pretrial detainee's conduct prior to confinement, the duration of the confinement, whether the pretrial detainee was monitored at regular intervals while in the restraint chair, whether the pretrial detainee was given regular breaks from confinement to the restraint chair, how the pretrial detainee responded when the officials offered to release the pretrial detainee from the restraint chair, and whether the pretrial detainee was injured or suffered pain as a result of confinement to the restraint chair. For example, in *Fuentes v. Wagner*, the United States Court of Appeals for the Third Circuit affirmed the denial of the plaintiff's motion for judgment as a matter of law after a jury found in favor of the defendants where there was evidence that the plaintiff had kicked his cell door, swung his handcuffed hands at COs, and continued to make threats during his first and second rest periods from the restraint chair. 206 F.3d 335, 341-43 (3d Cir. 2000). The plaintiff was in the chair for eight hours, but COs checked on his condition every fifteen minutes; released him every two hours for ten minutes to permit stretching, exercise, and use of the toilet; and fed him. *Id.* at 346.

In *Grady v. Holmes*, the court granted the defendants' motion for summary judgment where the plaintiff had allegedly attempted to squirt a white liquid on a CO, threatened the CO, returned a lunch tray with feces on it, and thrown feces from under his cell door. No. CV406-123, 2007 WL 2507395, at *3-4 (S.D. Ga. Aug. 30, 2007). The plaintiff was in the restraint chair for forty-two hours, but his restraints were checked by nurses regularly, his restraints were

removed twice so that he could eat, a CO gave him a blanket when he complained that he was cold, and the plaintiff admitted that the restraint chair was used "in a good-faith effort to maintain or restore discipline, rather than maliciously and sadistically to cause harm." *Id.*

In *Davis v. Lancaster County, Nebraska*, the court granted the defendants' motion for summary judgment where the plaintiff had refused several direct orders, had attacked a CO, and had caused a serious disturbance during which other inmates refused direct orders to lock down. No. 4:05CV3238, 2007 WL 2728549, at *4-6 (D. Neb. Sept. 17, 2007). The observation log indicated that the plaintiff was frequently monitored during the two to three hours he was in the restraint chair. *Id.* at *6.

In *Slaughter v. Dooly County*, the court granted the defendants' motion for summary judgment where the plaintiff was confined to the restraint chair for continuously beating on her cell door with her hands and feet. No. 5:06-CV-143, 2007 WL 2908648, at *2-4, *10-11 (M.D. Ga. Sept. 28, 2007). Although the plaintiff was in the restraint chair for eight hours, she was first released after two hours and then re-confined after she again began beating on her cell door with her hands and feet. *Id.* at *3. A CO checked on the plaintiff; offered her a drink of water and a bathroom break, which the plaintiff refused; and was told by the plaintiff that she would continue to beat on her cell door if released. *Id.*

Finally, in *Birdine v. Gray*, the court found for the defendants after a bench trial because the plaintiff was confined to the restraint chair as a last resort and only after physically resisting the COs on two occasions. 375 F. Supp. 2d 874, 880-81 (D. Neb. 2005). The plaintiff was observed by a nurse while in the restraint chair and given frequent opportunities to be released from the chair, but he declined those opportunities by refusing to agree to be compliant. *Id.* at 881. When the use of the chair exceeded four hours, the superintendent of the facility was called

at 4:00 a.m. to approve its continued use. *Id.* The court found there was no evidence that the restraint chair was used to punish the plaintiff, but instead that the restraint chair was used to prevent him from harming himself or damaging the holding cell. *Id.* The plaintiff was not injured as a result of the use of the restraint chair. *Id.*

In short, courts in the cases summarized above dismissed claims based on confinement to a restraint chair only after a detailed factual inquiry into the circumstances of the chair's use. The cases do not support dismissal of Undlin's claims on a Rule 12(b)(6) motion where he has alleged confinement to a restraint chair for four hours without any breaks or checks on his physical and mental condition, where he has alleged that he suffered excruciating and intolerable pain as a result of his confinement, and where it could be reasonably inferred that Undlin was confined to the restraint chair and left in it for four hours because he was argumentative and irritating. Accordingly, the Court concludes that the R&R made a manifest error of law by misapplying the Rule 12(b)(6) and *Bell* standards to Undlin's § 1983 claims against Miller, Pileggi, Hillestad, and the other Hennepin County COs associated with Undlin's confinement to the restraint chair. This Court then compounded that error by adopting the R&R.[3] Consequently, the Court grants Undlin's Rule 59(e) motion insofar as it seeks vacatur of the judgment on his § 1983 claims against Miller, Pileggi, Hillestad, and the unidentified Hennepin County COs based on his confinement to the restraint chair.

---

[3] These errors illustrate the difficulty of fairly evaluating a case where one side is represented by counsel and the other is not. *See Bounds v. Smith*, 430 U.S. 817, 826 (1977) ("Even the most dedicated trial judges are bound to overlook meritorious cases without the benefit of an adversary presentation."). This is especially the case where an unrepresented party engages in unorthodox behavior and hyperbolic and elliptical submissions. Consequently, the Court is grateful to the Federal Pro Se Project and to Mr. Gustafson and his colleague James W. Anderson for their capable representation of Undlin. Without expressing any opinion as to the probability that Undlin will succeed on his claims, the Court is confident that Gustafson Gluek's representation will help ensure that a just result under the law is reached.

**B.     State-law claims**

Undlin also contends that his state-law claims for assault, battery, and intentional infliction of emotional distress were improperly dismissed as barred by the doctrine of official immunity. Official immunity is a common-law doctrine that provides public officials with a defense to state-law tort claims. *Mumm v. Mornson*, 708 N.W.2d 475, 490 (Minn. 2006). Under Minnesota law, officials are generally entitled to official immunity unless the plaintiff shows either: (1) a ministerial duty is either not performed or is performed negligently or (2) a willful or malicious wrong is committed. *Schroeder v. St. Louis County*, 708 N.W.2d 497, 505 (Minn. 2006). For purposes of official immunity, willful and malicious are synonymous and are defined as "the intentional doing of a wrongful act without legal justification or excuse." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991). To establish malice, a plaintiff must do more than allege malice; the plaintiff must present specific facts showing the officers intentionally acted wrongfully without legal justification or excuse. *See Reuter v. City of New Hope*, 449 N.W.2d 745, 751 (Minn. Ct. App. 1990).

The R&R concluded that the Hennepin County Defendants' acts were discretionary and that Undlin alleged no willful or malicious conduct. Undlin maintains that there is a dispute as to whether the Hennepin County Defendants associated with his confinement to the restraint chair used the restraint chair as punishment, and consequently, a dispute as to whether they acted willfully or maliciously. The Hennepin County Defendants respond that official immunity applies because Undlin's confinement to the restraint chair was not punishment. Having concluded that Undlin alleged that his confinement to the restraint chair was punishment in violation of the Fourteenth Amendment, the Court concludes that Undlin has alleged facts sufficient to state a claim that Miller, Pileggi, Hillestad, and the unidentified COs intentionally

acted wrongfully and without legal justification or excuse when confining him to a restraint chair and leaving him in it for four hours. Consequently, the Court grants Undlin's motion insofar as he seeks vacatur of the judgment that official immunity bars his state-law claims for assault, battery, and intentional infliction of emotional distress against Miller, Pileggi, Hillestad, and the unidentified Hennepin County COs based on his confinement to the restraint chair.

## C. Deliberate indifference

Undlin also contends that the Complaint should be read to include a deliberate indifference claim against Faust and the Hennepin County Defendants. Undlin first raised a deliberate indifference claim in his supplemental memorandum in support of his Rule 59(e) motion. New legal theories or arguments may not be raised on a Rule 59(e) motion. *See Miller v. Baker Implement Co.*, 439 F.3d 407, 414 (8th Cir. 2006). The Court denies Undlin's motion insofar as he asserts a deliberate indifference claim as a basis for altering the judgment.[4]

## D. Amended Complaint

In his supplemental memorandum, Undlin requested permission to file a motion to amend his Complaint. In light of the Court's decision to vacate the judgment, Undlin may file a motion to amend his Complaint. Any such motion shall be heard by the magistrate judge and otherwise comply with Local Rules 7.1(a) and 15.1. *See* D. Minn. LR 7.1(a); 15.1. The Court expresses no opinion as to whether the motion should be granted.

---

[4] Undlin also contends that his *pro se* status was not accorded proper deference and that the Court should have considered his severe mental illness under Rule 17(c) of the Federal Rules of Civil Procedure. In light of the vacatur of the judgment as to the § 1983 and state-law claims, the Court declines to address these arguments.

## III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Undlin's Amended Motion to Alter Judgment [Docket No. 100] is GRANTED insofar as he seeks vacatur of the judgment against him and in favor of Miller, Pileggi, Hillestad, and the unidentified Hennepin County COs on his § 1983, assault, battery, and intentional infliction of emotional distress claims arising from his confinement to the restraint chair.

2. The remainder of Undlin's Amended Motion to Alter Judgment [Docket No. 100] is DENIED.

3. The Judgment entered on March 17, 2009 [Docket No. 86] is VACATED.

4. The Order adopting the R&R [Docket No. 85] is VACATED.

5. Counts I, III, VII, and X are REINSTATED insofar as they assert § 1983, assault, battery, and intentional infliction of emotional distress claims against Miller, Pileggi, Hillestad, and the unidentified Hennepin County COs.

6. All remaining claims in the Complaint are DISMISSED WITH PREJUDICE for the reasons stated in the R&R [Docket No. 80].

Dated: November 4, 2009

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge